I will, Your Honor. May it please, please the court. My name is Harper Benevich. I'm one of the attorneys for the plaintiffs in this case, and I'd like to reserve four minutes for this. Okay. This case challenges the defendant's implementation of a discriminatory pricing scheme that aimed to discourage solar energy use by consumers in Arizona, eliminate competition, and maintain its existing monopoly power. The district court dismissed plaintiff's claims on several grounds, which I now urge this panel to reverse. Given time constraints, unless you would like me to address a particular issue, as there are many in this case, I'd like to focus my argument on three issues. The accrual of claims, whether Arizona's notice of claim statute should have been applied when it directly conflicts with federal procedural law, and whether there was any type of improper attack on defendant's ratemaking procedures, either due to the filed rate doctrine or for failure to comply with the Arizona statute. Those are issues on defendant's counterclaim or cross appeal, excuse me. And is the government going to address other issues as you divided between yourself and the government's certain issues? Yes, your honor. The counsel from the Department of Justice is going to address the issues of antitrust injury and state action immunity defense. Okay, got it. Moving to the first issue, the district court erred in holding the plaintiff's federal equal protection claims and state claims were untimely, determining that those claims accrued when the defendant adopted the discriminatory rates at issue in 2015, as opposed to when they were actually applied to the plaintiffs after they acquired their solar energy systems and began being charged the higher rates at issue in later years, causing them actual injury. The court's holding was in direct conflict with Ninth Circuit precedent, as most recently described in the Flint case, as well as Scheer v. Kelly and the Byrd case cited in Flint. The accrual case articulated in those decisions makes clear that a cause of action accrues when a statute is actually enforced and applied against a particular plaintiff, and they suffer injury, not when it is initially enacted. In this regard, perhaps the Scheer v. Kelly case is instructive. That case dealt with a situation where the defendant argued that the plaintiff's claims accrued at the time the statute was first enacted. The court rejected those arguments, indicating that before the statute was actually applied to the particular plaintiff, there could be no injury or accrual. The court recognized that it would be illogical and lead to absurd results to make someone challenge a law within two years of enactment before it was ever applied to them and they were injured, as they would lack standing to challenge it. Here, plaintiffs couldn't have brought their claims in 2015 when the rates were initially adopted by the defendant. They didn't even have their solar energy systems at that time and hadn't been charged the discriminatory rates at issue, causing any type of injury. Had they tried at that time, a court most certainly would have determined that they would have lacked standing under Spokio, having incurred no concrete injury in fact. Additionally, the continuing violation doctrine, as recently interpreted in the Flint decision, applies here. That case makes clear that when there's a systematic policy or practice of discrimination that operates in part within the limitations period, the claim continues to accrue. As Flint teaches, when continued enforcement of a statute inflicts a continued or repeated harm, a new claim arises and a new limitations period commences with each new injury. That's what happened here and plaintiffs each brought their claims within that period. Counsel, if we were to agree with you that the trigger for the statute of limitations is enforcement of the rate as opposed to adoption of the rates, do we need to get to the continuing violation doctrine? I don't believe so in this case, other than perhaps for one of the plaintiffs, Mr. Ruprecht, but Mr. Dill's claim is perhaps most instructive. He bought his solar system and started to be charged these rates in July of 18. This case was commenced, the letter was sent in December, and then the lawsuit was filed in federal court in February of 19. You may be pushing on an open door on this question, and you've got a few more arguments to make before you come to the end of your time, you may wish to move on. Okay. Moving to the next issue regarding whether or not the court properly applied the Arizona Notice of Claims statute when it conflicted directly with federal procedure law. Under Erie, a federal court must apply federal procedure law and conflicting state laws must yield. The court below erred because there was a direct conflict between Arizona's Notice of Claims statute and Federal Rule of Civil Procedure 23. When a conflict exists as... So what's the conflict? I don't get it. The conflict here could not be clear. Federal law and Rule 23, as confirmed in the Ninth Circuit's Chen case and the U.S. Supreme Court decision in Campbell-Ewald, protects class representatives presenting class claims from pickoff attempts that would moot their individual claims and their standing before they have a fair opportunity to move for class certification. The Arizona statute, in contrast, mandates the exact opposite. It requires that a representative plaintiff, in this case, present an individual pickoff offer to the defendant entity and hold themselves out as having their claims mooted and where they would lose standing. In short, the class representative loses all control over their fiduciary duties to the class and their ability to maintain a class action. But it's not just... Oh, go ahead. Sorry. Judge Miller, go ahead. It's not just a rule about class representatives. It's part of... The state has created this claim under state law against state entities. And why isn't it more appropriate to view it as part of the substantive definition of the claim that before anyone can have a claim against the state entity, they have to go through this process of presenting it to the state before they can go to court? In this situation, and as interpreted by the Arizona Supreme Court in fields, it's impossible to balance the duties of a representative plaintiff against this rule. As the Supreme Court in the Shady Grove case determined, Rule 23 permits all class actions that meet its requirement, and a state cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements. But you can still have a class action. I mean, maybe this is... I mean, you may object that this is an overly formalistic way of viewing it. But if you have a group of people who have all gone through the requirements to perfect a claim under state law by presenting their claim to the agency and then the agency hasn't offered to pay them, you can then have that whole class go to federal court and file a class action. But what you're seeking to do is to bring claims on behalf of people who, under the state law that created the cause of action, do not have a claim against the state entity. And so I don't see how Shady Grove gets you that result. I think your example demonstrates the conflict because, as made clear in Chen and the Campbell case, a plaintiff seeking to bring a class action in federal court has a right to bring those claims and demonstrate that they satisfy all the requirements of Rule 23 as a single representative action. And those type of additional requirements are exactly what the court there said a state cannot impose. You would be limiting your class action in that situation to... There would be no absent class members. It would be only people who have actually gone through the administrative procedure to present this letter in a limited exhaustion period and then would be left to pursue their claims. Let me understand the way this state statute works. Let's say that the plaintiff, indicating that he or she intends to bring a class action, files under notice a claim and complies with it, as your client may or may not have, but complies with and has a very specific, okay, this would satisfy me. The entity comes back and says, okay, here's your money. Are they required to take it? Or can they say, okay, thank you very much. And I'm bringing a class action on behalf of a lot of people. And I view my responsibility to the rest of the class that's not yet certified as such that I'm not going to take it. Does the entity get to say, I'm sorry, you have to take it and your suit has to be dismissed? I believe that's how the statute works, Your Honor, and how it was interpreted in the Flint case. The representative plaintiff loses all control over their ability to maintain a class action and puts it... The letter needs to be, under the case law and under the Flint decision, it needs to be an irrevocable offer that all the defendant governmental entity has to do is say, yes, we will pay this amount. And as you know, class actions in general deal with very small amounts, relatively speaking. It's one person with a small claim who tries to band together to enforce a policy that is deemed to be unlawful. It would be illogical for any class action to go forward under the scheme where a defendant entity would not elect to pick off that class representative and leave someone open to challenge. Is there anything in the wording of Rule 23 that conflicts or is it merely sort of the spirit of or the practical operation of Rule 23 that's in conflict with the operation of this Arizona statute? I believe there is. If you look at Rule 23A, the class... 23A has four requirements, and two of those are that the class representative present typical claims and that they be adequate. And there's a number of cases that say a class representative who's using the threat of a class device to try to obtain a individual settlement for themselves breaches their fiduciary duties to the class and is atypical. All of the things that the district court in this situation found that the representative plaintiffs did not include in their notice letter are all things that would have been used to establish that the plaintiff was inadequate, lacked typical claims, and no longer had any standing. The only requisite information that the court found was that that was improper to present in a Rule 23 case. The plaintiff here attempted to balance the two laws, and instead of presenting an individual demand, presented a class demand with a common formula, something that didn't treat them in any special way. They tried to uphold their fiduciary duties to the class. Likewise, with the issue on attorney's fees, numerous cases find that a class counsel, putative class counsel in a class action, present a conflict and act improperly and unethically by trying to present a demand for attorney's fees at the outset of a class action. And that's why it's typical practice and to uphold the adequacy of counsel requirement in a class action, not to negotiate the attorney's fees until after the class relief is secured. And these are all things that the district court found that the plaintiffs and counsel here should have done to comply with the statute, it was directly. Okay, I'd like to warn you that you've used up all of your 13 minutes. So, unless you want the government to have some words with you afterwards you probably should stop now, and we will give you a chance to respond. Thank you, Your Honor, I appreciate it. Your Honors, and may it please the court, Matthew Mandelberg for the United States. I will address two issues. First, and predominantly antitrust injury. And second, and briefly the state action doctrine. The plaintiffs have properly alleged antitrust injury. As the Supreme Court has stated, the antitrust laws are a consumer welfare prescription, and under this court's precedent, consumers are the presumptively proper antitrust plaintiffs. Here, plaintiffs are electricity consumers who are harmed directly by defendant's anti-competitive penalties charged to solar consumers. The district court committed error when on the one hand it found that SRP's high prices on solar customers amounted to exclusionary penalties, while on the other hand it found that plaintiffs, consumer victims of that scheme, inadequately alleged antitrust injury. Antitrust injury is injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful. That is satisfied here. Plaintiff's injury is paying a penalty for choosing SRP solar competitors in SRP's efforts to maintain its electricity monopoly. When plaintiff's injury is the very means of exclusion, that satisfies causation. Defendant's central argument on causation is that plaintiffs did not suffer antitrust injury because their injury does not stem from the anti-competitive effect, only its cause. The Supreme Court's decision in Blue Cross of Virginia v. McCready defeats this argument. In that case, on a motion to dismiss, psychiatrists were alleged to conspire with Blue Cross to exclude clinical psychologists by denying subscribers reimbursement. The Supreme Court found that plaintiff consumers who saw those clinical psychologists and were not reimbursed successfully fled antitrust. Mr. Manolov, can I interrupt for just a minute? We seem to have lost the picture of Mr. Volchok. Mr. Volchok, can you hear us? I just assume he heard the argument before we go any further. Let's wait for him to try to reconnect. Sorry, this is not your fault, but the technology has glitched on us here. I'll give him a call real quick. Okay, thanks, Kwame. So just hold that thought. Sure. Your Honor, may I ask a procedural question while we're waiting? Sure. Yes, please. There's a question posed to me by the clerk about whether I wanted to ask for rebuttal time, and I assumed as an amicus I'm not permitted, and I just wanted to confirm that. Oh, you can have rebuttal time if you like. Okay, thank you. We're adding him now. Okay, thanks, Kwame. I'm nicer than the clerk. Mr. Volchok, welcome back. Can you hear? I can. I do apologize to the court, Your Honor, and to opposing counsel and the government's counsel. Okay, not to worry. Let's back up. Let's put maybe seven minutes back on the clock. And I don't know what point, I lost track of what point, we lost you, but we were hearing an argument about what constitutes compensable antitrust injury to plaintiffs when there's a slight sort of mismatch between cause and effect. Okay, so if you can back up and kind of run your argument again then, Mr. Mandelbaum, that'd be great. Mr. Mandelberg. Should I? That's okay. And should I start from the very beginning, Your Honor? Yeah, maybe. Pretend you're two or three minutes ago. Okay. Okay, fair enough. All right. Your Honors, and may it please the court, Matthew Mandelberg for the United States. I will address two issues. First, and predominantly antitrust injury, and second, and briefly, the state action doctrine. The plaintiffs have properly alleged antitrust injury. As the Supreme Court has stated, the antitrust laws are a consumer welfare prescription. And under this court's precedent, consumers are the presumptively proper antitrust plaintiffs. Here, plaintiffs are electricity consumers who are harmed directly by defendants' anti-competitive conduct, anti-competitive penalties charged to solar consumers. The district court committed error when, on the one hand, it found that SRP's high prices on solar customers amounted to exclusionary penalties, while, on the other hand, it found that plaintiffs, consumer victims of that scheme, inadequately alleged antitrust injury. Plaintiff's injury is paying a penalty for choosing SRP's solar competitors in SRP's efforts to maintain its electricity monopoly. When plaintiff's injury is the very means of exclusion, that satisfies causation. Defendant's central argument on causation is that plaintiffs did not suffer antitrust injury because their injury does not stem from the anti-competitive effect, only the anti-competitive cause. The Supreme Court's decision in Blue Cross of Virginia v. McCready defeats this argument. In that case, on a motion to dismiss, psychiatrists were alleged to conspire with Blue Cross to exclude clinical psychologists by denying subscribers reimbursement. The Supreme Court found that plaintiff consumers who saw clinical psychologists and were not reimbursed successfully pled antitrust injury because their injury was inextricably intertwined with the exclusionary act. In fact, it was the very means of exclusion. Like McCready, plaintiff consumers here faced a sanction for choosing the wrong provider, in this case SRP's solar rivals. Like McCready, plaintiff consumers did not yield to the coercive pressure. And like McCready, plaintiff consumers' injury is antitrust injury because SRP's penalty is the very means of exclusion. On state action, the district court correctly found that SRP's defense fails. Arizona has chosen a policy in favor of substantial competition in electricity markets. Arizona revised statute 40-202B says, It is the public policy of this state that a competitive market shall exist in the sale of electric generation service. Given that policy, and the lack of any other state law that displaces competition in the way competition was harmed here, SRP cannot establish the clear articulation requirement of the state action doctrine. The Supreme Court in Phoebe Putney defeats defendants' argument on rate making. The state of Georgia in that case authorized public hospitals to acquire other hospitals. But the Supreme Court found that did not authorize those public hospitals to make anti-competitive acquisitions. The same principle applies here. SRP may have authority to set its own rates, but that does not authorize SRP to set anti-competitive rates in the form of penalties on consumers who use its solar rivals. Can I ask you, this is not related to one of the issues that you addressed in your brief, but the Local Government Antitrust Act, I know you haven't taken a position on it, but can you just, is it your understanding that that is not a defense to liability, but really a defense to damages and fees, and because there is a claim for injunctive relief here, whether or not that statute applies, we would still have the injunctive claim? Sorry, Your Honor, as you see this, not only did our briefs not address it, but we don't have a position to take on that here. You don't have any position on it, okay, fair enough. Any questions? It sounds like there are no questions from the bench. Does that complete the substance of your argument? Did you hear me? Yes, Your Honor. It sounds like I could, can you hear me, Your Honor? I can hear you, yes, I hear you. Hello? Yes, I hear you. Oh, yeah, so, good. Then if I'm permitted to reserve the balance of my time for rebuttal, I will do so. Why don't you reserve then, that's fine, good, okay. Let's now hear from Mr. Volchuk, representing the Salt River Project Agricultural Improvement and Power District. May it please the Court, Daniel Volchuk for the District. I'd like to reserve two minutes for rebuttal just on our cross-appeal issues. Your Honors, I'd like to begin with what I submit is the simplest basis for affirmance, which is that every one of plaintiff's claims is an impermissible collateral attack on the District's rate making. The federal claims are thus barred by the filed rate doctrine, and the state claims by Arizona's statutory analog, Sections 3810 to 812. Starting with the state claims, Sections 3811F and 3812F, each expressly provide that no state court has jurisdiction to review an order or decision of the District, save via one of the three expressly enumerated categories of lawsuits. Plaintiffs do not assert that this case falls into any of those categories, it does not. Nor do plaintiffs dispute that under ERIE, these state statutes apply fully here in federal court. In fact, plaintiff's briefing never even cites 3811F or 3812F. And the District Court, though rejecting this argument, didn't cite those provisions either. Now what plaintiffs do say is that it doesn't make sense to bar their claims under these statutes because the statutes require that challenges to a District rate making be brought promptly. And plaintiffs say they had no incentive to challenge the E27 rate until years after the fact. But that is just a plea for a court made equitable exception to a jurisdiction stripping provision. Plaintiffs cite no authority for the proposition that courts can create such exceptions, that is that courts can assert jurisdiction where the legislature has said there is none. And even if courts could do that, your honors, Arizona's short time limit makes eminent sense because it gives utilities and their millions of customers finality and thus stability regarding rates. Now plaintiffs also argue that under Arizona law, a divestiture of jurisdiction must be clear, but the statutory language here is quite clear. In fact, as our briefing says, it is very similar, materially indistinguishable from language in a federal statute that this court has said, quote unquote, unambiguously, strips court of jurisdiction. So all of plaintiff's state law claims are barred. Their federal claims are barred for similar reasons by the filed rate doctrine. Here's the question I have about the filed rate doctrine. In every other case of which I am aware, in which we've applied it, there is some entity that is reviewing the rates that are filed. Here, as I understand it, you filed the rates with yourself. There's nobody else overseeing those rates. So why in this circumstance should we think that the doctrine applies? So Judge Miller, you're right. I'm not aware of a case that addresses this situation either way. And this court, when it has encountered novel situations under the filed rate doctrine, has looked to the underlying rationales for the doctrine. And those rationales, as I'll explain, is why we submit the doctrine is fully applicable here. So this court has explained that two core rationales for the doctrine are, first, that courts should respect a legislature's choice of what entity will be responsible for setting rates. And second, that courts should recognize that institutionally, they have limited experience and expertise in this area and should leave rate making to those who do have that experience and expertise. Now, those rationales show why the doctrine should apply here. The Arizona legislature chose the district to make rate setting decisions, and the district has the requisite expertise. By contrast, those rationales have nothing to do with approval by a separate agency. But I want to make clear, Judge Miller, applying the doctrine here would not mean, as I think plaintiffs suggest, that there would be no regulation of the district's rate making. In fact, even if you set aside the notion of the district's board reviewing the rates submitted by the district's management, even if you set those aside, there are at least three forms of regulation. So first, there are the lawsuits that are authorized by the state statutes I discussed a moment ago, 3811 and 812. Second, there's regulation by the Arizona legislature, which is where the Arizona Constitution places the responsibility to regulate public power entities in the district, excuse me, in Arizona, public utilities like the district. And third, there's regulation in the form of elections of the district's board. So you've got three. So numbers two and three are really regulation by the possibility of legislation and regulation by the possibility of election, correct? That doesn't sound like anything like sort of the sort of rate making supervision that allows one to be protected by the filed rate doctrine. But that year, but that's getting back to my response to Judge Miller, Judge Fletcher. This court has made clear the rationales for the filed rate doctrine are, as I articulated, they're not so much about protecting rate makers. In fact, to the extent they are, it's about protecting rate makers who don't bring these type of lawsuits from unequal rates. That is, if certain customers or rate makers bring these type of lawsuits and succeed, you're then going to have unequal rate making. So the rationales that this court has identified actually align perfectly with applying the filed rate doctrine here. And I would note that it is more regulation here than you have in the classic case of application of the filed rate doctrine. If you are a utility customer and your utility's rates are approved by FERC, you may be able to bring a lawsuit, a petition for review in the Court of Appeals analogous to the lawsuits here under the state laws. You can certainly go to Congress. You cannot vote out the FERC commissioners the way you can vote out. No, I get that. But I'm afraid I'm rather inclined to the position, at least implied by Judge Miller's question, that the protection of the filed rate doctrine exists because some entity outside the entity charging the doctrine has made the decision. Some state governmental entity outside the entity charging is making the decision. Here, you are both setting the rate and making the charge. And that does, I have to say, I need to be persuaded, and so far have not been, that the filed rate doctrine protects you because you're not just setting the rate, you're charging the rate. So if you look at this court's decision in Carlin, it specifically said whether or not the agency charged, this is Carlin versus Dairy America, cited in Arbreeze, whether or not the agency charged with reviewing certain rates or certain prices has actually done its job is irrelevant under the filed rate doctrine. The question is just, were the rates approved by the agency pursuant to statutory authority? That's what Carlin says. That's almost a quote out of Carlin. The question under the filed rate doctrine is simply whether the rates were approved by the agency pursuant to statutory authority, not whether an agency did a sufficient job investigating those rates, not whether it was looking to protect certain interests or protect certain customers. The filed rate doctrine is about deference to a legislature's choice of who should be doing it, and deference to the experience and expertise and recognition of court's limited competence in that area. But, Your Honors, let me make one last point, and then I'm happy to move on to the filed rate doctrine. If the doctrine doesn't apply here, if these claims are not barred, if there can be a federal lawsuit every time that a customer is dissatisfied with how a utility has set his or her rate, and that's whether it's electricity, water, gas, what have you, that threatens enormous disruption and uncertainty for millions of utility customers. These rate makings are going on all the time, and rate making is basically a zero-sum game. So if someone is paying less than someone else is paying more, that's because the costs to supply the water or the gas or the electricity don't go away just because someone pays less. So there will almost always be someone unhappy about a rate making, and plaintiffs don't explain why it makes sense to allow a federal lawsuit and the disruption that would follow every time that happens. So I'll stop there. That is our collateral attack argument, and if the court agrees with those points, then it doesn't need to reach any other issue in the case. But moving on, a second ground for the dismissal of plaintiffs' antitrust claims— and sorry, if I could just tie up, as I think I made clear, we had two separate collateral attack arguments. The state claims are under the state statutes. Those are barred whether or not the court agrees with the filed rate argument, and conversely, filed rate is just on the federal claims. A second ground for the dismissal of the antitrust claims is that plaintiffs failed to plausibly plead antitrust injury. That is, they failed to allege that their injury flowed from what allegedly made the district's conduct unlawful. If the district's conduct had been unlawful, it would have been because of the alleged harm to competition from solar energy suppliers. That is the anti-competitive effect that plaintiffs allege. But the injury that plaintiffs say they suffered was paying higher electricity rates, and that injury did not flow from any harm to competition from solar energy suppliers. Whether solar competition went up, down, or stayed the same after E27 was adopted, plaintiffs would be paying the exact same rate. The harm didn't flow from the desired anti-competitive effect, but it flowed from the anti-competitive means that you are alleged to have used to achieve that effect. So what's your answer to the point that McCready says that when the harm flows from the anti-competitive means, that that's sufficient to establish antitrust injury? Judge Miller, I submit there's a reason why McCready was not cited in any of the briefs, and it's because it's different from this case in a way that this court has already recognized is dispositive. So in McCready, the plaintiff alleged an agreement to restrain trade, an antitrust conspiracy. An antitrust conspiracy is itself unlawful. So when Ms. McCready claimed that her injury resulted from the alleged conspiracy, she was alleging that her harm flowed from what made the conduct unlawful. Here, by contrast, and this may go more directly to your question, Judge Miller, the alleged conduct is not itself unlawful. A single business raising its prices does not violate Section 2 of the Sherman Act. The government itself says that expressly at the top of page 23 of its amicus brief. So if the conduct here had been unlawful, and again, the harm has to flow from what made the conduct unlawful. That's a long line of this court's and the Supreme Court's cases. If the conduct had been unlawful, it would only have been because of the alleged reduction in competition in the solar energy market. So to allege antitrust injury, they had to allege that their plaintiffs had to say that their claimed injury of paying higher rates flowed from the alleged reduction in solar energy competition. Now, as I mentioned, this is a distinction that this court has already embraced, specifically in American ad management, which we cite. This court in that case was distinguishing Brunswick, the Supreme Court case, the bowling case, where the Supreme Court had found no antitrust injury. And what this court said was that Brunswick was different because in Brunswick, the alleged conduct itself was not unlawful. Again, like here. But the alleged conduct in American ad management was, like in McCready, an agreement to restrain trade. And this court said just what I said, that that is itself unlawful. And because of that, this court said there was antitrust injury because, and I'll just quote it, injury flows from that which makes unlawful GTE's conduct the agreement, unquote. That's the bottom of page 1056 in the federal, in the, in F3rd. And again, the same is true of McCready. It's also true of Glenn Hawley, which plaintiffs rely on. This court said there that an agreement to restrain trade is inherently destructive of competitive conditions. But here the alleged conduct is not unlawful. So we're on the Brunswick side of the line.  Nor did they even cite Lucas engineering from this court, which we cited for the same proposition. Your honors, I submit that what I've just argued has to be the correct reading of McCready and of Glenn Hawley. Because the government's reading and plaintiff's position were generally would eliminate the antitrust requirement. Their reading would mean that being injured by an antitrust violation is enough for injury. But we know that that's not right. Antitrust injury means injury, among other things, that flows from what makes the conduct unlawful. The Supreme Court said that before McCready in Brunswick. And it said it after McCready in Atlantic Richfield, which we also cite. So while American ad management is binding and dispositive on this point, plaintiff's antitrust injury is wrong. Their argument is wrong because even as a matter of first principles and their challenge fails because they never offer, as I said, any coherent explanation of how they're paying a higher rate for electricity resulted from any diminution in solar competition. What they say is that the adoption of the E27 rate caused two harms. Right. Harm to them paying higher rates, harm to solar energy competition. But they don't show or explain how the latter was caused by the former. My last point on antitrust injury, your honors, plaintiffs claim that they allege injury as competitors, not just as customers. And I don't want to linger on that because that claim is not just forfeited, but affirmatively waived. Plaintiffs told the district court that they were not claiming injury as competitors. We said that in our principle and response brief here and plaintiffs offered no response to the waiver argument in their response and reply brief. I'd like to next discuss plaintiff's equal protection claims, starting with our argument that the claims were properly dismissed because they are implausible. Now, the key threshold point here is that rational basis review applies. So wait a minute. I don't think the district court got to that. This record just threw him out on statute of limitations or am I missing something? You are not missing something, Judge Fletcher, but we preserve below the argument that even if they were timely, they were also implausible. And so as we presented in our brief to the principle and response brief to this court, that provides an alternate ground for affirmance. And if I may, I'd like to start with that. So, as I said, rational basis review applies highly deferential. And in fact, especially deferential, even as rational basis review goes, because we're talking about economic regulation and regulatory line drawing. So the order here is the kind of decision that the Supreme Court has said is, quote unquote, virtually unreviewable. That's FCC versus Beach Communications, which we cite. To survive a motion to dismiss, given that standard, plaintiffs had to plausibly allege that there was no conceivable rational basis for the classifications that they identified. They did not do so. And I want to explain why. But first, let me just note that plaintiffs say in their response and reply brief that our argument here improperly relies on documents that the district court declined to take judicial notice of. That is not correct. Those documents show the rationales that the district articulated for the rate. And we cited them in our statement as background and context. But we expressly said in our equal protection argument section that the rationales the district gave are not relevant. So nothing in our argument depends on the documents. Plaintiffs' allegations are not plausible. They point to two groups that they say were treated differently than they were. The district's non-solar customers and its grandfathered solar customers, meaning those who went solar before the rate took effect. But there were conceivable rational basis for differential treatment of each of those groups. For grandfathered solar customers, one rational basis is that they had legitimate reliance interests in that they had invested in solar systems in reliance on the pre-E27 rate. And in reliance on incentives that the complaint says the district offered for customers to go solar. Plaintiffs never explained why that is not a conceivable rational basis. Similarly, for the non-solar customers, a rational basis was that before E27, the district's rates were not allocating fixed costs proportionally to solar and non-solar customers. In fact, the complaint itself recites that basis. Now, plaintiffs say that these were not the district's real reasons. But the real reasons don't matter under rational basis review. What matters is whether these could have been the real reasons. They could have, as I've explained, and by not plausibly negating them, not negating what the Supreme Court in both Iqbal and Twombly called an obvious alternative explanation. By not negating those, plaintiffs have failed to state plausible equal protection violations. And I would note that plaintiffs' briefing on this issue relies almost entirely on cases preceding Iqbal and Twombly. But, of course, those are the cases that govern here, and they raise the 12B6 standard. Plaintiffs had to exclude obvious alternative explanations, and they didn't. Now, plaintiffs also say there couldn't have been a rational basis because the E27 rate supposedly violates a 1998 Arizona law. But the Supreme Court has explicitly rejected the approach that allows state law violations to be bootstrapped into federal constitutional ones. That's a case called Armour v. City of Indianapolis, A-R-M-O-U-R, 566 U.S. 673. So plaintiffs can't manufacture an equal protection violation by alleging a violation of state law. And since their complaint does not negate obvious alternative explanations for the E27 rate, their equal protection claims are implausible. My last point on equal protection, Your Honors. If you look at footnote 13 of the amended complaint, plaintiffs cite an article explaining that not long after the district adopted the E27 rate, the Arizona Corporation Commission, which oversees the state's private utilities, did something similar. It treated solar customers as a separate rate class, it reduced the credits they could get for electricity they returned to their utilities, and it grandfathered in existing solar customers. Again, footnote 13 of the amended complaint, so this court can certainly consider it. I submit that that underscores that the adoption of the E27 rate was an entirely ordinary, an entirely rational step. And it shows that if plaintiffs' equal protection claims can go forward, that is opening the door to a flood of lawsuits challenging every rate-setting decision by a utility, which, as I said, threatens enormous disruption and uncertainty for utilities and their customers. Your Honors, with two minutes left, I'd like to reserve the remainder of my time for rebuttal on the cross-appeal issue. Well, let me, I'm not sure, I'm a little tangled up. What's the cross-appeal for which you're seeking to do rebuttal? We raised two issues on cross-appeal, the collateral tax, which I've discussed, and state action immunity. And did we have some argument on that already? That is to say, I thought we did, from Mr. Rabinovich. Is that wrong? Mr. Rabinovich did not address it, Mr. Mandelberg did. And did he address it? And so you can respond. He addressed state action immunity for about a minute, Your Honors. I'm happy to address it for a minute now. I did want to save some time, but the court prefers to do so. Can I just ask a procedural question before you get to that, which is, why did you cross-appeal? Because the judgment, what you got was a judgment dismissing all of the claims. And you're not seeking to alter the district court's judgment, right? It seems like your cross-appeal is really just asserting some alternative grounds for affirming the judgment that you've got. Or am I missing something? Well, recall, Judge Miller, that the district court dismissed the antitrust claim, the federal antitrust claims, without prejudice. And so there was at least a possibility of a reversal that would allow the claims to go forward. And so if we win on either state action immunity, which applies just to antitrust claims, or the filed-rate doctrine, then the dismissal would have to be with prejudice. If I could, Judge Fletcher, again, I'll take the court's guidance on whether the court wants to hear me now. I think let's hear you right now. Sure. Let me give the short version, obviously, in the interest of time. I mean, the state action immunity applies when a state has clearly authorized the conduct that is challenged. And what the Supreme Court has said that means is that the alleged anti-competitive effects are the ordinary or the foreseeable results of what the state has authorized. Here, the state has authorized rate-making, and the Supreme Court in Southern Motor Carriers explained that rate-making is inherently anti-competitive. So it is certainly foreseeable when a state gives an inherently anti-competitive power that its use could have anti-competitive effects. And that's all the more clear when the state requires, as is the case here, that the rates be, quote, unquote, just and reasonable. That was also the case in Southern Motor Carriers, and the Supreme Court there said that's enough because, as explained in footnote 25 in the accompanying text, just and reasonable rates bear no discernible relationship, that was the Supreme Court's phrase, to rates that would prevail in a perfectly competitive market. So that alone is enough, and plaintiffs never even respond to the just and reasonable point, Your Honor. Now, what they say, and Mr. Mandelberg also alluded to it, is that the state showed a desire to allow competition when it passed a 1998 statute Mr. Mandelberg quoted from at 4202B. We'll set aside for a moment that 4202B does not apply to the district. It applies to the state's private utilities, but the more salient point, Your Honor, this court has explained in Lancaster Community Hospital, which we cite, that what matters is the actual conduct at issue, not a state's statements generally about competition and so on. If a state, Lancaster Community Hospital specifically says this, if a state has made some statements or taken some action allowing competition, and yet has carved something out that would be anti-competitive, then state action immunity applies. So even though the state had passed a law to allow some competition, it kept in place both the authorization for rate making and the requirement of just and reasonable rates, which, again, Southern Motor Carriers dictates is clear articulation. And the last point I'll make is what the 1998 statute that the plaintiffs and the government rely on provided was for the introduction of competition once it was authorized by the Arizona Corporation Commission. And plaintiffs allege in their complaint footnote nine, the Arizona Corporation Commission has not done so yet. And under this court's decision in California CNG, that by itself demonstrates clear articulation. And plaintiffs never respond to California CNG. They never even cite it. Thank you for your time. Okay, thank you very much. Now, Mr. Rabinovich, either you used all your time or we used all your time. Why don't we put two minutes on the clock in case you don't have anything to say in response? Thank you, Your Honor. I'd like to use that to respond to the arguments that Defense Counsel, Mr. Volchek, raised to the items I raised, and then if the DOJ can respond to his other arguments on those issues. First, with regard to the rate-making argument, as the District Court properly found, those statutes 3810 through 3812 did not apply because plaintiffs here were not parties to the action or the proceeding. And they didn't participate, they weren't charged these rates at the time, and the statute just, those provisions just don't apply. 3812 regarding jurisdiction, as Mr. Volchek indicated, applies to state courts. We're in federal court here. The filed rate doctrine argument, I believe from your questions that you understand the critical part missing from Mr. Volchek's argument, which is there must be oversight by an independent agency. These rates aren't filed and there is no oversight by any independent agency, which all the cases require. And Carlin does not stand for that, for the proposition that he referenced it for. The court in Carlin went through an extensive analysis as to what the USDA, an agency, was doing to provide oversight to these rates and compared it to what the agency in the earlier Gallo decision did. And indicated in some, the USA did, one, possess the authority and two, did exercise it. So what was that situation? And I think perhaps that's best articulated in the status laws, county status laws case, where the court made clear that the decision for the application of the filed rate doctrine to apply, there must be federal oversight. The whole doctrine hinges on that. Regarding his arguments, and I'm out of time, regarding the equal protection, if I could just finish my one point, the statute is in direct conflict with 3805. It says no discriminatory rates. The statute is completely contrary to the justifications that the, that SRP provided for setting these rates. Okay, thank you. Mr. Mr. Mr. Mandelberg, you've got some time, although I'm not sure you need it. Thank you, Your Honor. First, I want to address a novel distinction that defense counsel draws between McCready and the Brunswick line of cases. I would point your honors to Glenn Holly, which specifically, which was where this court has addressed both McCready at length and drew a distinction with the Brunswick line of cases. And there, the court drew a distinction between cases where plaintiffs benefited from less competition. Those are the Brunswick line of cases versus McCready, where they benefited, the plaintiffs benefited from more competition. And in this case, like McCready and unlike the Brunswick line of cases, solar consumers want and benefit from more competition. On state action, I want to address two points. SRP's authority to set its own rates does not authorize it to set its own rates anti-competitively. Setting one's own rates is fundamentally no different from any other seller in a marketplace. Defense points to Southern Motor Carriers, but that case is not on point because the Mississippi Service Commission had authority over all intrastate rates. SRP does not control the rates of its solar rivals or any other party. And lastly, defense points to California C&G. The state action doctrine addresses the state's sovereign choices and California C&G was addressing California's sovereign choices and Arizona has made different choices. I have not seen an argument that SRP solar rivals are unlawfully in this market. And from an antitrust law perspective, SRP and solar compete. A consumer can look to one or the other to meet its electricity needs. If there are no further questions, go ahead. Any further questions from the bench? I thank all of you for your very useful arguments in a very interesting case. Ellis v. Salt River Project, etc. now submitted for decision and we're now in adjournment. Thank you very much. Thank you, Your Honors. Thank you, Your Honors. The court for this session now stands adjourned. Thank you.
judges: W. Fletcher, Miller, Hunsaker